# CASES IN CHANCERY.

JUNE TERM, 1849.

---

ROBERT R. FREEMAN and others *v.* PETER Z. ELMENDORF
and others.

In Feb. 1841, E. recovered a judgment against M. F. F., and issued a *fi. fa.*, which was levied on a farm and a house and lots as the property of M. F. F. R. R. F., a son of M. F. F., for himself, and as guardian of his infant children, filed a bill, stating, that the said M. F. F., in July, 1833, "by deed of bargain and sale sold and conveyed" to the said R. R. F., his heirs &c., the said farm; and that, in Dec. 1837, the said M. F. F., "by a deed of bargain and sale sold and conveyed" to the said infants, their heirs &c., the said house and lots; both which deeds the bill states were recorded May 25, 1846; and stating facts tending to support the validity of the deeds; and praying an injunction restraining E. from proceeding on his execution. The injunction was allowed. An answer was put in denying the *bona fides* of the deeds, and stating facts tending to show the want thereof, and denying their validity as against the judgment for that reason; and, also, denying their validity as against the judgment by reason of their not having been recorded within fifteen days.

The Chancellor said that both questions were properly triable at law, on ejectment by the purchaser under the execution; and that the judgment creditor should be permitted to proceed to a sale under his execution. The injunction was dissolved.

The bill, filed Feb. 1, 1849, by Robert R. Freeman, for himself, and by Sarah B. Freeman and Matthew F. Freeman, infants, by the said Robert R. Freeman their father and next friend, states, that on the 23d Feb. 1841, Peter Z. Elmendorf recovered a judgment in the Supreme Court against Jas. S. Nevius, G. D. Wall and Matthew F. Freeman, the father of the said Robert R. Freeman, for $4,566 damages and $37 59 costs; by virtue of which an execution in the nature of a *testatum fi. fa. de bonis et terris* issued to the Sheriff of Middlesex. That the Sheriff levied on a large amount of real and some personal

estate of M. F. Freeman, a defendant in said judgment ; and that some time after, but when precisely the complainant does not know, the Sheriff also levied on a farm belonging to the complainant R. R. Freeman, containing 147 71–100 acres, and also on a house and lots of land belonging to the said Sarah and Matthew, complainants, infant children of the complainant R. R. Freeman.

That the said Matthew, the father of the complainants, on the 27th of July, 1833, by deed of bargain and sale sold and conveyed to the complainant R. R. F., his heirs and assigns, all the farm and premises before mentioned, and in said deed particularly described as follows, (giving the description;) as by the said deed, duly acknowledged, and now in the possession of the said R. R. F. will appear ; which deed was duly recorded on the 9th of May, 1846.

That the said Matthew F. Freeman, the grandfather of the said infants, on the 23d of Dec. 1837, by a deed of bargain and sale sold and conveyed to the said infants, their heirs and assigns, all the house, lots of land and premises before mentioned and in said deed described as follows, (giving the description ;) as by the said deed, duly acknowledged, and now in the possession of complainants will appear ; which deed was recorded on the 25th May, 1846.

The complainant Robert F. Freeman states, that although the consideration named in the said deed to him from his father is stated to be $5 and natural affection, yet that his father had in his hands of the money of said complainant, at the time, about $1500, which this complainant agreed should be considered as satisfied and paid by his said father by and upon the execution of said deed ; and that the balance of consideration for the said deed, and the whole consideration of the said deed made to the said infants, was the natural love and affection which the grantor bore to the complainant and the said infants his grandchildren.

That at the time of the execution and delivery of the said two several deeds the said Matthew, the grantor, was, as the complainant is informed and believes and therefore charges, in independent circumstances, wholly unincumbered by debts, and the said property so conveyed was free and clear of all judgments, mortgages and liens.

That the complainant R. R. F., immediately after the said farm was conveyed to him as aforesaid, went into the possession thereof and resided thereon, using and enjoying the same as his own, until April 1, 1839, when, having previously leased the same to one Daniel S. Voorhees, the said Voorhees went into possession thereof as the tenant of this complainant; and that Voorhees continued to occupy the same as such tenant of this complainant, paying him the annual rent thereof, until last April, (April, 1848,) when this complainant rented the house to Melancthon F. Carman, and has since farmed the land himself; and the said sale by the said Matthew to this complainant, and the possession, occupancy and enjoyment of the said property, either by himself or his said tenants, has been known and notorious in the whole neighborhood from the time of the said conveyance to the present time.

That at the time the said Matthew conveyed the said house and lots to the said infants he resided on the same, and continued to reside there, by this complainant's permission, until about two years ago, when this complainant took possession of it, and has ever since resided on it, his said children Sarah and Matthew living with him; and that the fact of the conveyance was generally known at the time, or soon after, in the neighborhood, and was often mentioned by both the grantor and the complainant in public and in private.

That, having very little knowledge of the law, he was not aware that it was necessary to have his said deed and the deed to his said children recorded, for any purpose except that of providing for the case of the loss of the title papers; and that in consequence of that fact he failed to have the said deeds recorded sooner; and that he was first informed of its importance when, about May 1, 1846, he applied to one Melancthon Mundy to loan him a sum of money on said farm.

That he is informed and believes that Elmendorf held, at the time he recovered said judgment, a mortgage upon a valuable mill property in Somerville as security for the same debt, given to him by John I. Gaston, who at that time held the title to said property in trust for the said Wall, Nevius and Freeman, for whose use the said money was originally borrowed.

That he is informed and believes that after the execution of the note on which said judgment was recovered, and which was secured by the said mortgage as aforesaid, the said Freeman sold and conveyed all his interest in the real estate to the improvement of which the said money was applied to one Robert Van Rensselaer, who assumed and undertook to pay the proportion of the said note due from the said Freeman as part consideration for said conveyance. That said Van Rensselaer failed to make such payment, and afterwards died insolvent, without having procured the said Freeman to be released from his liability on said note; and that afterwards the said Elmendorf released the said mill property to the said Gaston, and that without any consideration, and thereby gave up the security which was, as this complainant is informed and believes, intended as a protection of his father and the other parties to the said note, and that without their knowledge or consent.

That, soon after the entry of the said judgment, Elmendorf caused an execution to be issued to the Sheriff of Somerset, who thereupon levied upon a valuable real estate of the said Matthew F. Freeman in that county; that said Matthew, some time afterwards, sold the same, and thereupon, without any consideration from the purchaser, released the same from the lien of the said execution; and that a part of the moneys due on said judgment was raised by the Sheriff by a sale of real estate of the said Nevius in that county, but the precise amount this complainant does not know.

That the said Sheriff of Middlesex, by virtue of the said testatum fi. fa. placed in his hands as aforesaid, first levied on all the real and personal estate of the said Freeman, and at the time of said levy was, as this complainant is informed and believes and therefore charges, informed by the said Freeman that the said farm and house and lots were not his property, but had been sold and conveyed by him as aforesaid to the complainant and his infant children; and the said Sheriff did not at that time levy on said farm and house and lots; and this complainant was not aware until about a year ago that any such levy had been made; and that this complainant has not taken any steps in the matter before, under the hope that said Elmendorf would desist

from his attempt to hold this complainant's said property and the said house and lots liable on said judgment, or that the said execution would be satisfied from some other sources.

That he is informed and believes, and therefore charges, that said Freeman has made several payments on account of said judgment, but the particular amount of said payments he does not know ; and that about $2,000 in all have been paid to Elmendorf on account of said judgment.

That among other property of said Freeman which was levied upon as aforesaid by the said Sheriff (of Middlesex) was a valuable real estate in Woodbridge, part of which has since been sold by said Freeman, for $4,000, as this complainant has been informed and believes, and which was more than sufficient to pay the whole balance on said execution ; and which said property, on or about April 4, 1846, and before the sale thereof as aforesaid, Elmendorf released to the said Freeman from the lien of his said judgment and execution, as this complainant is informed and hopes to be able to prove, and that without any consideration or the payment at the time of any part of the said judgment, and without the knowledge of this complainant.

That Elmendorf resides in New Brunswick, only about five miles from this complainant's residence ; and from the fact that the sale and conveyance of the said farm to this complainant and the sale and conveyance of the said house and lots to the said infants, by the said Freeman, was generally known by the public in the neighborhood, and that the possession, occupancy and enjoyment of his said farm by this complainant or his tenants as aforesaid was open and notorious, this complainant has reason to believe, and he therefore charges, that the said Elmendorf well knew, at and before the recovery of his said judgment, and before he executed any of the before mentioned releases, that the said Freeman had sold and conveyed the said farm and the said house and lots, and that the same were the property of the complainants as aforesaid, and not of the said Freeman.

But whether he had or had not such knowledge the complainant insists that, said conveyances having been made *bona fide* and for a lawful consideration, long before the recovery of the said judgment, and at a time when the said Freeman was wholly

unincumbered with debts and had no creditors to be affected by said conveyances, the said real estate so conveyed to this complainant and said infants are not liable to be sold to satisfy said judgment.

That the said sheriff of Middlesex has within a few days informed this complainant's father that he had received a notice of amercement from the attorney of Elmendorf in the said suit, and that he intended to advertise the said real estate of this complainant and the said infants, so levied on as aforesaid, as the property of said Freeman, for sale under the said execution, and that he intends to sell the same forthwith.

The bill prays that the sheriff and Elmendorf may be injoined from selling ; and that the said property may be wholly released and discharged from the operation of said suit, execution and levy ; and for such other and further relief, &c.

The injunction was allowed.

Elmendorf put in his separate answer.   He says he does not know the value of the property levied upon, of his own knowledge, but recollects that said Freeman told him that the property he was in possession of was worth at least $10,000; which was one inducement for this defendant to sign the release hereinafter mentioned.

He says that the sheriff levied upon the said farm and the said house and lots as the property of Freeman (the elder), as the levy shows.

That he has no knowledge or information in regard to the consideration of the said two deeds, except what is stated in said bill and what appears upon the face of the said deeds.   That he doth not admit that the grantor had in his house at the date of said deed to R. R. F., or at any other time, about $1500 or any other sum, which said R. R. Freeman agreed should be considered as satisfied and paid by his father by and upon the execution of said deed ; and he leaves complainant to make such proof of the consideration as he shall be advised.   But says he does not believe there was any money paid by said R. R. F. to his father, nor by the said infants or either of them, at the time of the execution of said deeds, respectively.

That he does not know and does not believe, and therefore

does not admit, that Freeman was in independent circumstances, wholly unincumbered with debts, at the time he conveyed said property to R. R. F., and at the time he conveyed to the said infants. That he has heard that about that time said Freeman was indebted, and that he had been associated or in some way connected in business, with some person at the South, or elsewhere, for whom he had incurred liability ; and that he was apprehensive of losing money by him. That it may be true that at the time the said deeds were made the property therein described was free of all judgment, mortgages and liens ; but he has no knowledge or information on the subject, except that from an examination of the records, which he subsequently made or caused to be made, he believes there were no judgments or mortgages on said property at the time of the execution of said deeds ; but whether there were any other liens on the property at the time he is ignorant. That he is ignorant whether R. R. F., immediately after said farm was conveyed to him, went into the possession thereof and resided thereon, using and enjoying the same as his own until April 1, 1839 ; or whether he leased said premises to Daniel S. Voorhees ; and whether Voorhees went into possession thereof as his tenant, and whether Voorhees continued to occupy the same as his tenant, and whether Voorhees paid any annual or other rent for the same, or whether the complainant rented the house to Mr. F. Carman, and whether he has since farmed the land himself, and whether the said sale by M. F. F. to the complainant, and the posssession, occupancy and enjoyment of the said property either by himself or his said tenant has been known and notorious in the whole neighborhood from the time of said conveyance to the present time.

He admits that at the time of said conveyance of said house and lots to the said infants the said M. F. F. resided on the same, and continued to reside there ; but whether it was by the permission of the complainant or not he is ignorant. And he is ignorant whether the said complainant took possession of said house and lots about two years ago, or at any other time, and whether he has ever since resided on it ; and whether the children of said R. R. F. reside with him ; and whether the fact of the said conveyance was generally known at the time or soon after, and

whether the same was often mentioned by said M. F. F. and the complainant, or either of them, in public or in private.

That it may be true that the complainant had little knowledge of the law, and was not aware that it was necessary to have said deeds recorded for any purpose except that mentioned in the bill, and that in consequence thereof he failed to have said deeds re corded until the time in the bill mentioned, and that he was first informed of its importance at the time mentioned in the bill; but that this defendant has no knowledge or information in regard to the same, and cannot therefore admit the same. And this defendant is informed and believes that the said deeds were not recorded until the said M. F. F. had become largely indebted in New York, and he became embarrassed in his affairs, and his creditors had taken strong measures against him and he became apprehensive that measures would be adopted to obtain his property in New Jersey.

This defendant insists that the said deeds not having been recorded until long after his judgment against said M. F. F., and this defendant having, at the time of the entry of his judgment, no knowledge, information or belief of the said deeds of conveyance, or either of them, the said deeds are wholly void as against him or his judgment; and that, whether the omission to record said deeds proceeded from ignorance or negligence, it cannot in any way affect the rights of this defendant under his said judgment.

He admits that when he recovered his said judgment he held a mortgage upon a valuable mill property in Somerville as security for the same debt, given to him by J. I. Gaston and his wife, which, as he is informed and believes, the said Gaston held in trust for himself and said Wall, Nevius and M. F. F.; and which mortgage bears date July 26, 1838, and contained in it the following condition, (giving the condition, which is, that if Nevius, Wall and M. F. F. shall pay to Elmendorf $4,0000, according to the tenor and condition of a note or obligation given by them to Elmendorf, dated Sept. 1, 1837, which had become due May 1, 1838, drawing interest from the date thereof, the said mortgage and note should be void;) but which mortgage was unaccompanied by any bond from said Gaston to this defendant,

and was never recorded, as by the the said mortgage, now in this defendant's possession &c.

He further says, that at the time when Gaston executed the said mortgage to him Gaston stipulated with him that he should not place it on record until Gaston should apprize him it was necessary to put it on record for his security. And that he, relying on the promise of Gaston, and also having confidence in the ability of the makers of the said note, did not cause it to be recorded.

He says he does not know for what use the money mentioned in said note was borrowed ; but he believes it was borrowed to pay off a judgment held against said mill property by one Janney Dawes, and which was an incumbrance thereon at the time said Wall, Nevius and M. F. F. purchased the same.

He admits that after the execution of said note which said mortgage was intended to secure, but which, for the reason aforesaid, it did not secure, the said M. Freeman sold and conveyed all his interest in the real estate so purchased by said Gaston, Nevius, Wall and Freeman to Van Rensselaer, who assumed and undertook to pay the portion of said note due from Freeman as part consideration of said conveyance, and that Van Rensselaer failed to make said payment, and afterwards died insolvent without having procured said Freeman to be released from his liability on said note. But this defendant has no knowledge, information or belief that the money loaned by this defendant on the said note was applied to the improvement of the said mill property, and therefore he denies the same.

He denies that he released the said mill property to Gaston ; and denies that he gave up the said mortgage, but says he still has said mortgage in his possession, uncancelled ; but that, said mill property having been sold by said Gaston, and the said mortgage not having been recorded, this defendant considers it of no value or validity, and hereby offers, upon the payment to him of the amount due him on the said judgment, to assign and transfer the said mortgage to the complainant.

He admits that he caused a *fi. fa.* to be issued to the Sheriff of Somerset ; who thereupon levied on a valuable real estate of M. F. F. in that county ; but what was the value of it he does

not know, but he does not believe it was worth more than $1500; and he believes that the said M. F. F. sold the same; but he has no recollection and does not believe that he ever released the same from the lien of the said execution; but if he did, it was done at the earnest solicitation of the said M. F. F., because he was informed by the said M. F. F., and fully believed from his own examination of the records, that the residue of the property of the said M. F. F. subject to his judgment was abundantly sufficient to pay his judgment.

He admits that a part of the money due on his judgment was raised from a sale of the real estate of Nevius, by the Sheriff of Somerset, under a decree of foreclosure; a surplus after paying said decree having been paid by the Sheriff to this defendant on his said judgment; which surplus · amounted to $964 60, and was credited on the judgment Oct. 8, 1842.

· He admits that the Sheriff of Middlesex, by virtue of said *testatum fi. fa.*, levied on the real and personal estate of said M. F. F.; but whether the Sheriff, when he so levied, was informed by said M. F. F. that the said house and lots were not his property but had been sold and conveyed by him as aforesaid, this defendant is ignorant, and therefore doth not admit. But he does not believe that the said Sheriff made more than one levy on the said property; and he grounds his belief upon the fact that the said Sheriff told him that he, the said Sheriff, did not believe that the said M. F. F., at the time the Sheriff called on him to get an inventory, had given up all his property to be levied on, for that he, the said Sheriff, upon examining the records of the Clerk's office of said county, found that said M. F. F. had not given up to the said Sheriff all his property to be levied upon. And this defendant believes that the said Sheriff did not make any levy on any real estate until after he had examined said records. And this defendant believes that said Sheriff of Middlesex made but one levy, because he has been informed by his counsel and believes that there is but one levy on the execution issued into Middlesex remaining on file.

He does not believe that the said M. F. F. told the Sheriff of Middlesex, at the time he made his said levy or at any time previous thereto, that he had sold the said farm and house and lots.

to the complainant and his said infant children.    But this defendant insists that whether said M. F. F. gave to the said Sheriff such information at the time of his said levy or not, cannot in any way affect or impair the lien of his judgment, execucution and levy.

He says he does not know whether the said Sheriff, at the time he made his levy on the real and personal estate of said M. F. F., levied on the said farm and house and lots; but he believes that the said Sheriff, in May, 1842, by virtue of an execution issued on said judgment, did levy on said farm and house and lots, as by reference to said levy will appear.

He says that the said Sheriff, in the execution of his duty under the said execution, acted according to his own discretion; and examined the records of the county himself, and made such levy or levies as he thought proper, without any particular instructions from this defendant.

He says he does not know whether the complainant was or was not aware until about a year ago that any such levy had been made; nor does he know why the complainant has not taken any steps in the matter before; and that he has no information on that subject other than what is derived from the bill; and therefore leaves the complainant &c.

He admits several payments on the judgment; and that he received from M. F. F., on the 25th Nov. 1844, $150, and on the 16th June, 1845, $75, and on the 4th April, 1846, $40 92. And he admits that other sums have been paid on account of said judgment; and that the whole amount of money received from all sources on account of said judgment is $1,780 52.

He admits that among the property of the said M. F. F. levied on under the said execution was a valuable real estate in the township of Woodbridge, Middlesex county, part of which, as he is informed and believes, has been sold for $4,000.    And that this defendant on or about April 4, 1846, after, and not before the sale thereof by the said M. F. F., did release the said property to the said M. F. F. from the lien of said judgment and execution, in consideration of certain payments in said release mentioned and of the sum of $1.

He denies that the said sum of $4,000 was, at the time of the

said release, more, than sufficient to pay the balance on said execution.,

He says it may be true that the complainant did not know of the said release at the time it was made ; but he has no knowledge or information on the subject, except what he derives from the bill, and therefore does not admit the same.

He admits that he now resides in New Brunswick, and about five miles from the residence of the complainant ; but says that when the said judgment was recovered, and for a considerable time after, and when the said levy was made, he resided in Somerset, and about twenty miles distant from the residence of the complainant.

He says that before the entry of his judgment, and at that time and before he executed said release, he had no knowledge, information or belief, that the said M. F. F. had sold or conveyed the premises in the bill mentioned to the complainant or the said infants, or that the said farm and house and lots were the property of the complainants and not of the said M. F. F.

He further says he has no knowledge, information or belief, that at the time of the entry of his judgment the sale and conveyance of the said farm to the complainant, and of the said house and lots to the said infants was generally known to the public in the neighborhood.

That he has no knowledge or information whether at the time of the entry of his said judgment the possession, occupancy and enjoyment of the said farm so pretended to have been conveyed to the complainant was open and notorious by the complainant or his tenants ; and this defendant does not believe the same.

That he was induced to make the said release to the said M. F. F. by the strong solicitations of said M. F. F. and his repeated assurances that the residue of his property levied upon under his said judgment was more than sufficient to pay the balance due on his said judgment; and that the said M. F. F., at the time he solicited him to make said release, did not intimate or inform or give this defendant to understand, in any way, that he had sold the said farm to the complainant, or that he had sold the said house and lots to the children of the complainant ; but the impression received and left on the mind of this defendant at

the time of executing the said release, by the conversations and solicitations of the said M. F. F., was, that the said farm and house and lots still belonged to the said M. F. F., and were subject to the said judgment, execution and levy. That this impression was confirmed by the fact that this defendant, shortly previous to the making of the said release, searched the records of the county, and did not find there recorded any deed from the said M. F. F. to the complainants, or to the said infants, for any of the land mentioned in the bill.

He says that, though it may be true, and he believes it is, that there were no judgments against the said M. F. F. at the time the said deeds from M. F. F. to the complainant and said infants bear date, yet he does not admit that the same were made *bona fide* and for a lawful consideration, or at a time when the said M. F. F. was wholly unincumbered with debts and had no creditor to be affected by said conveyance. That, from the best information he can obtain on the subject, he believes that the said M. F. F. was indebted at the time of those conveyances. And, from the fact that the said deeds were not recorded until just after the said M. F. F. became largely indebted and got into serious embarrassment in regard to some moneyed transactions, in New York, which impaired his credit and character, and might have been the means of causing legal proceedings against his property in New Jersey, when connected with the fact that the grantees were the son and grand-children of said M. F. F., who was a man well acquainted with business, this defendant has strong reason to doubt, and does doubt, whether the said conveyances were *bona fide.*

He admits that he intends to cause the Sheriff to sell under his said execution and levy, and submits that the injunction should be dissolved.

A motion to dissolve the injunction was submitted without argument.

THE CHANCELLOR.    Both the questions which are included in this case are proper for the law courts. The judgment creditor should be permitted to proceed to sell under his execu-

tion.  On ejectment, brought by the purchaser, the *bona fides* of the deeds, and the effect of our statute declaring deeds void against subsequent judgment creditors &c not having notice thereof unless recorded within fifteen days after their delivery. Rev. Stat. 643, Sec. 18, will be proper subjects of inquiry and decision.  The complainant's are in possession; and if their deeds are good as against the judgment, they will not be disturbed by the Sheriff's making a deed to any one else.

Injunction dissolved.